Helen T. TURNER, Administratrix, Plaintiff, Appellant,

v.

WILSON LINE OF MASSACHUSETTS, Inc., Defendant, Appellee.

No. 5159.

United States Court of Appeals First Circuit.

Decided March 13, 1957.

Charles J. Wilkins, Boston, Mass., with whom Leo P. Doherty, Boston, Mass., was on brief, for appellant.

Thomas H. Walsh, Boston, Mass., with whom Leo F. Glynn, Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff-appellant, a citizen of Massachusetts, brought as the administratrix of the estate of her deceased husband a civil action on the law side of the court below demanding trial by jury of

her claim to recover damages from the defendant, a Massachusetts corporation, for personal injuries inflicted upon her husband and for his ensuing death. The defendant seasonably moved to strike four of the five counts in the complaint and the court below held a hearing on the motion. Thereafter, treating the motion to strike as in effect a motion for summary judgment, the court granted the motion and entered judgment dismissing the plaintiff's complaint. She thereupon took this appeal.

The following facts were found by the District Court on the basis of the allegations in the complaint and the statements of counsel for the plaintiff at the hearing on the defendant's motion to strike.

The coastwise steamer Pilgrim Belle, owned by the defendant, ran aground on a bar in Boston Harbor in June, 1955, and took water. The McKie Lighter Company, apparently at the defendant's request, undertook salvage operations including pumping the vessel out. The plaintiff's intestate, Turner, an employee hired and paid by McKie, came on board the Pilgrim Belle to assist in the bailing operation as supervisor of the pump. McKie used its own pump which was operated by a gasoline motor. This pump was in operation for 14 hours on a hot humid day in a confined space on board and its gasoline motor exhausted inboard. Although the captain of the Pilgrim Belle was on board at all times while the pump was in operation, and so also was the defendant's marine superintendent, no one opened any ports or windows in the space where the pump was operating or put a blower in operation. As a result that part of the vessel became contaminated with carbon monoxide gas. On these facts the court below said that it could be found that the master was negligent in permitting this dangerous situation to occur on board his vessel, and furthermore, whether the master was negligent or not, the gas contaminated area in the vessel made it unseaworthy.

While Turner was engaged in his work with the pump he inhaled excessive quantities of carbon monoxide gas for perhaps seven or eight hours. During that period he complained of pains in his chest and he was nauseated. Nevertheless he continued to work in ignorance of the cause of his illness until he lost consciousness. He died a short time later without regaining consciousness.

The complaint, which the District Court [142 F.Supp. 265] aptly described as "a hybrid product of questionable ancestry," is in five counts. The first count is for personal injuries short of death caused by negligence and the second count is for personal injuries short of death caused by unseaworthiness. The third count is for wrongful death caused by negligence and the fourth count is for wrongful death caused by unseaworthiness. The fifth count is for funeral expenses.

Nowhere in the complaint is there any statement of the law under which recovery is sought. At the hearing, however, counsel for the plaintiff told the court that the complaint as to all of the causes of action alleged was brought under the Jones Act, 46 U.S.C.A. § 688. The District Court, however, did not hold counsel to that limitation. Instead, noting that the complaint might readily be amended, it proceeded to consider whether a plaintiff was entitled to recover under any law, statutory or decisional. Concluding that the plaintiff on the facts alleged in the complaint and stated orally by her counsel was not entitled on her complaint to recover against the defendant under any law, the court below entered the judgment of dismissal from which she took this appeal.

The questions presented are jurisdictional.

The plaintiff did not see fit to invoke the original jurisdiction over civil cases of admiralty or maritime jurisdiction conferred on the district courts by Title 28 U.S.C. § 1333. Instead she brought this civil action demanding jury trial on the law side of the court. Our search for jurisdiction is limited to either § 1331 or § 1332 of Title 28. The diversity

jurisdiction conferred by § 1332 clearly cannot be invoked for the plaintiff and the defendant are both citizens of Massachusetts, and so also, apparently, was the decedent. This leaves for consideration only § 1331 wherein it is provided: "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

The Jones Act referred to above is undoubtedly a law of the United States. But the plaintiff cannot recover under that Act, for, as the District Court pointed out, the rights of action therein conferred are given to employees against their employers, Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692, and on the facts alleged in the complaint and stated orally at the hearing, which the court below was careful to make sure were stated fully, there is no basis for finding that Turner was an employee of the defendant.[1] Continental Cas. Co. v. Thorden Line, 4 Cir., 1951, 186 F.2d 992. It seems clear to us that he was an employee of McKie Lighter Company, hired and paid by it, and that he was under its, not the defendant's, direction and control as to the management of the pump under his supervision.[2]

The lack of an employer-employee relationship between the defendant and the decedent also disposes of the fifth count wherein recovery is sought for funeral expenses. The only law of the United States suggested as a basis for recovering funeral expenses is Article 7 of the Shipowners' Liability (Sick and Injured Seamen) Convention, 1936, 54 Stat. 1699. That Article imposes liability on the shipowner for burial expenses in case of death occurring on board, or on shore, "if at the time of his death the deceased person was entitled to medical care and maintenance at the shipowner's expense. That is to say, the right conferred by the Convention to recover funeral expenses not only supplements the right to maintenance and care but also depends for its existence upon that right. But the right to maintenance and care, while conferred by general maritime law, and hence in the view prevailing in this circuit, as will presently more fully appear, by federal rather than by state law, is a contractual right attached as an incident to, and having its origin in, the seaman's contract of employment. Doucette v. Vincent, 1 Cir., 1952, 194 F.2d 834, 838, and cases cited. Thus the right to maintenance and care cannot arise in the absence of some sort of contract of employment, and from this it follows that the right to recover funeral expenses appended thereto by the Convention cannot arise in the absence of an employer-employee relationship. We turn now to the counts for wrongful death.

No right to recover for wrongful death was accorded either by the

1. On the day before the District Court's opinion came down the plaintiff moved to amend her complaint to allege that the decedent was a "seaman employed by the defendant." If the amendment were allowed it would at the most be only an allegation of a conclusion which could not be supported on the evidentiary facts alleged and fully stated orally to the court.

2. Moreover, even if Turner were an employee of the defendant, his administratrix' exclusive remedy would be that provided by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., unless (assuming she could establish that the defendant had failed to secure payment of compensation), she could show that the decedent came within the exception to the coverage of that Act given to a "member of a crew." Id. § 903. This she cannot do, if for no other reason, because, as this court said, with citation of cases not quoted, in Carumbo v. Cape Cod S.S. Co., 1 Cir., 1941, 123 F.2d 991, 995, to qualify as "'a member of a crew'" there must be "a more or less permanent connection between the ship and the worker, * * * as opposed to the temporary relationship existing in the case of a carpenter or a mechanic who is brought aboard only to do repair work while the ship is in port." Cf. Senko v. LaCrosse Dredging Corp., 1957, **77** S.Ct. 415.

common law or by the general maritime law. The plaintiff must therefore look to some statute. The Death on the High Seas Act, so called, 46 U.S.C.A. § 761, et seq., although a law of the United States, does not provide a basis for recovery as sought in the third and fourth counts, because the decedent was neither injured nor died on the high seas but in Boston Harbor within the territorial waters of Massachusetts. Furthermore, recovery under that Act must be by suit for damages in admiralty, not by civil action at law. The only remedy the plaintiff may have for the death of her husband is that provided by the Massachusetts death statute.

■■ It is true that general maritime law, which Chief Judge Magruder writing for this court in Doucette v. Vincent, supra, 194 F.2d at pages 839 et seq., said the Constitution makes United States law, contra Jordine v. Walling, 3 Cir., 1950, 185 F.2d 662, gives the plaintiff access to the Massachusetts death statute. Thus in a sense United States law and state law cooperate to afford relief for wrongful death occurring on the navigable waters within the territorial limits of a state. But United States law only gives access to state law; it is the latter which gives the remedy.

State law in this situation supplements federal law, and this supplementation, while constitutionally permitted, is not constitutionally commanded. The right to recover for wrongful death occurring on the navigable waters of a state, if such right exists, is created by the state,

for in the absence of a state wrongful death statute there would be no right to recover at all.[3] Thus the plaintiff's cause of action for her husband's wrongful death is not one arising under the Constitution or laws of the United States, for that law only makes the state law available, but it is one arising under Massachusetts law which provides both the right to recover and the scope of the remedy. Original jurisdiction over it is therefore not conferred on the district courts by § 1331 of Title 28 of the United States Code. See footnote 7 of Chief Judge Magruder's opinion in Doucette v. Vincent, supra, 194 F.2d at page 843.

■ The first and second counts of the plaintiff's complaint, wherein she seeks to recover for her husband's pain and suffering, remain for consideration.

In these counts recovery is sought under the general maritime law, which as already appears, according to the view prevailing in this circuit, the Constitution makes United States law. Even assuming that the Massachusetts survival of actions statute, as a supplement to the general maritime law, gives the plaintiff the right to maintain this aspect of her action as grounded on unseaworthiness as well as on negligence, see O'Leary v. United States Lines Co., 1 Cir., 1954, 215 F.2d 708, 710–711, the question is whether the matter in controversy in these counts exceeds the sum or value of $3,000 exclusive of interest and costs.

The District Court found that no such sum was involved in these counts. It

3. It is true that the issue of whether the death is wrongful depends on whether there was a breach of some duty owed by the defendant to plaintiff's decedent, which duty, it would seem, is defined by general maritime law. See O'Leary v. United States Lines Co., 1 Cir., 1954, 215 F.2d 708, 711. However, it is significant to the determination of this case that regardless of the duty owed to the plaintiff's decedent, plaintiff's right as the representative of the decedent's estate, which is the basis of this cause of action, is a creature of state law. Byrd v. Napoleon Avenue Ferry Co., D.C.E.D.La. 1954, 125 F.Supp. 573, 578, affirmed 5 Cir., 1955, 227 F.2d 958, certiorari de-

nied, 1956, 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455. This is not a case where the state merely creates an additional remedy for the enforcement of a pre-existing federal right. Cf. Smith v. Kansas City Title & Trust Co., 1921, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577. Here the plaintiff would have no maritime remedy *or right* of any kind in the absence of the state wrongful death statute. Under such circumstances we consider this court bound to follow the holding of the Supreme Court in a closely analogous situation in Moore v. Chesapeake & O. R. Co., 1934, 291 U.S. 205, 211–217, 54 S.Ct. 402, 78 L.Ed. 755.

said that according to the plaintiff's statement of facts the decedent "had tightness across the forehead, severe headache, muscular weakness, dizziness, nausea and vomiting, lasting over a period of at least 7 or 8 hours; that he complained of pain in the chest, stating that he thought he had pneumonia." Then the court continued: "However such pains may be characterized actions speak louder than words, and it is admitted that he continued to work throughout this interval. While $3,000 might well be compensation for agonizing pain of short duration due to extreme trauma, or well known excruciating poisons such as strychnine, and even if it might not be appropriate for me to take judicial notice of the fact that carbon monoxide is a favorite suicide medium because of its relatively innocuous-feeling and insidious effects, I would certainly hold that pain for 7 or 8 hours not severe enough to cause a man to stop work or realize that something more serious was the matter is not of $3,000 extent."

The amount of money appropriate as compensation for pain and suffering cannot be determined by any precise measure or rule. Judgment in this field is necessarily subjective and must rest upon an evaluation of the severity of the pain suffered, its duration and its mental consequences. Severe or excruciating pain, even for only a period of time measured by minutes, might warrant an award of over $3,000 whether or not coupled with fear of impending death. So also would mild pain if suffered for months or years. But here we have a case of mild pain, perhaps no more than severe discomfort, consisting of headache, chest pain and nausea, not severe enough to cause the sufferer to quit work or fear impending death, and lasting for not more than some 7 or 8 hours. The court's judgment as to what a reasonable jury would award as maximum damages for such pain and suffering is subjective. So is ours. In this situation about all that we can or need to say is that we agree with the District Court.

Judgment will be entered affirming the judgment of the District Court.